ORDERED.

Dated: March 18, 2021

*Roberta A. Colton*
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

PERFORMANCE DRIVEN
LANDSCAPING CORP.                    Case No.8:20-bk-03563-RCT

Debtor.                              Chapter 11

## ORDER CONFIRMING SECOND AMENDED PLAN

THIS MATTER came on for a confirmation hearing on February 18, 2021 at 10:00 a.m. on the Second Amended Plan of Reorganization (Doc. 154) (the "Plan") filed by the Debtor, PERFORMANCE DRIVEN LANDSCAPING CORP.

Benjamin G. Martin, Esq., appeared on behalf of the Debtor, Performance Driven Landscape Corp; Debra Jackson, appeared as Subchapter V Trustee; Benjamin Lambers, Esq., appeared for the Office of the United States Trustee; Charles Johnson appeared on behalf of Gardenmasters of SW Florida, Inc.; James A. Timko, Esq. appeared on behalf of James and

Maria Giczewski; Jason Weber, Esq., appeared on behalf of Cadence Bank; and Kelly Roberts, Esq., appeared for Joy DeGrasse.

The Plan having been transmitted to creditors and equity security holders; and it having been determined that the requirements for confirmation set forth in 11 U.S.C. § 1191(a) have been satisfied; and that the requirements for confirmation set forth in 11 U.S.C. § 1191(b) have also been satisfied in that the Plan does not discriminate unfairly, and is fair and equitable, and that the Plan provides for payment of all the Debtor's projected disposable income to be applied to payments under the Plan, and for the reasons stated orally and recorded in open court which shall constitute the Court's findings of fact and conclusions of law, it is hereby

**ORDERED and ADJUDGED**:

1. The Second Amended Plan of Reorganization filed by the Debtor on November 6, 2020 (Doc. 154), as modified by the language set forth below in subparagraph a. through subparagraph h. is hereby CONFIRMED pursuant to § 1191(b) of the Bankruptcy Code.

a. The following language is added to the language of Article 3, Section 3.02:

"Terms agreed upon by the holders of administrative expense claims are as follows:
A. The administrative expense claim of Benjamin G. Martin, Debtor's Counsel, will be paid in six (6) equal monthly installments starting thirty (30) days after the Effective Date.
B. The administrative expense claim of Debra Jackson, Subchapter V Trustee, will be paid in six (6) equal monthly installments starting thirty (30) days after the Effective Date.
C. The administrative expense claim of Rebecca Wolf, Debtor's Accountant, will be paid in six (6) equal monthly installments starting thirty (30) days after the Effective Date.
D. The administrative expense claim of James R. Giezewski and Maria L. Giezewski will be paid in two installments of $15,000 each. The first installment shall be paid within five business days of the Effective Date, and the second installment shall be paid thirty (30) days later.

  b. Section B, page 2, of the Plan; the second paragraph of Article 1: Summary; Article 4, Subsection 2.B. of the Plan; Article 4, Subsection 3.A. of the Plan; and Article 9 of the Plan are hereby deleted and the following language is substituted for and shall supersede the language therein.

"The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in §1191(c)(2) of the Bankruptcy Code, which is proposed to be 48 months, of between $5,000.00 to $60,000.00 per month.

 The final Plan payment is expected to be paid on or about January 31, 2025."

**"ARTICLE 1: SUMMARY**

 This Plan provides for four classes of secured claims; one class of priority claims; one class of unsecured non-priority claims; and one class for the equity interests of the Debtor. Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately seventy two cents (.72) on the dollar. This Plan also provides for the payment of administrative and priority claims."

 "**B**. **Class 2B**. **Cadence Bank, N.A.** The allowed secured claim of Cadence Bank for the accounts receivable and other collateral of the debtor will be satisfied as follows:
 (1) Cadence Bank shall receive on account of its secured claim deferred cash payments equal to the allowed amount of its secured claim, with six percent (6.0%) interest, over forty eight (48) months. The monthly payments will be $1,789.00 for the first twelve (12) months with the first monthly payment commencing on the Distribution Date. Thereafter, commencing on the thirteenth month and continuing for thirty-six (36) additional months, the monthly payment will be $2,600.00 per month. Forty-eight (48) months after the Distribution Date, Debtor shall tender a lump sum payment to satisfy the remainder of the secured claim in full.
 (2) An additional lump sum payment of $50,000.00 will paid on Cadence Bank's secured claim from the personal funds of John DeGrasse. This lump sum payment will be paid within sixty (60) days of the Distribution Date and applied in accordance with the Joint Stipulation Agreement with the Debtor, Cadence Bank and Joy DeGrasse.
 (3) Debtor shall maintain the appropriate insurance for the collateral.
 (4) Pending payment of its claim, Cadence Bank shall retain the lien securing its secured claim to the extent of the allowed amount of such claim. Upon payment of its allowed secured claim, Cadence Bank shall release the lien."

"3. **CLASS 3**: **Non-Priority Unsecured Claims**.

A. The Allowed Unsecured Claims of Class 3 shall receive a pro-rata share of a fund totaling $1,436,400.00 (the "Fund"), created by the Debtor's payment of a monthly payment for forty eight (48) months, with the first monthly payment commencing on the Distribution Date. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class. The monthly payment during the forty eight (48) month payment period may fluctuate during the payment period between a range of $5,000.00 a month to $60,000.00 a month depending on the disposable income of the Debtor, however, such payment but will be not less than $5,000.00 per month. In addition, the total amount of such monthly payments paid each year shall be not less than the following amounts: $45,000 for the year 2021; $300,000 for the year 2022; $400,000 for the year 2023; and $400,000 for the year 2024; it is understood and agreed that the "minimums" in the preceding sentence shall not diminish the Fund. In no event shall the total payments to the Fund be less than $1,436,400.00. "Disposable income" shall mean the monthly income received by the Debtor, less the payment amounts reasonably expended for all operating expenses, working capital, taxes attributable to the working capital authorized by this Order, and other payments under this Plan. Taxes attributable to working capital shall be determined by the year-end balance of the working capital reserve times the income tax rate of the owner (the "Income Tax Calculation") and the lesser of (i) the Income Tax Calculation amount or (ii) the owner's actual income taxes due for the year shall be distributed to the owner to pay income taxes. This amount will be deducted as an expense for disposable income calculation purposes. For purposes of determining "disposable income", the amount of working capital permitted to be accumulated shall not exceed $200,000.00. The category of "working capital" under the Plan is to act as a reserve fund to address potential periods of monthly negative cash flow. The debtor may accumulate and utilize working capital; however, the working capital account shall never exceed $200,000.00. By way of illustration, it is acceptable for the debtor to: (a) accumulate a $200,000.00 working capital account; (b) spend $50,000.00 from the account; and then replenish the account with $50,000.00 resulting in an account balance of $200,000.00. The debtor may not, however, replenish working capital, where the replenishment impairs the ability of the debtor to make agreed upon payments under the plan; on the contrary, the working capital account shall be utilized, as necessary, by the debtor to ensure that all payments under the Plan (including operating expenses and payments to all creditors) are made in a timely fashion."

### ARTICLE 9: DISCHARGE

<u>Discharge</u>. The Debtor's Plan is being confirmed under § 1191(b) of the Bankruptcy Code and confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 4 years

of this Plan, or as otherwise provided in §1192 of the Code.   The Debtor will not be discharged from any debt;

(i) on which the last payment is due after the first 4 years of the Plan, or as otherwise provided in §  1192; or

(ii) excepted from discharge under §523(a) of the Code.

c. **Article 8.11** is hereby deleted and the following language is substituted for and shall supersede the language therein.

8.11 Distribution Date**.**   Date upon which Distribution to be made under the Plan will begin, which date will be on or before the first business day following the expiration of thirty (30) days following entry of the Confirmation Order.

d. **Article 8.12** is hereby deleted and the following language is substituted for and shall supersede the language therein.

8.12 Effective Date of Plan The effective date of this plan is the first business day following the a later of both i) fourteen days after the entry of the order of confirmation; and ii) fourteen days after an Order is entered by this Court approving the Settlement Agreement between James R. Giezewski and Maria L. Giezewski and the Debtor.

e. The following language is added to the language of Article 11, Section 11.01, at the end of the paragraph:

**In addition, any default of the Joint Stipulation Agreement between Joy DeGrasse and Cadence Bank, that remains uncured for ten (10) days after receipt by the Reorganized Debtor of written notice from Cadence Bank of such default to counsel for the Debtor and/or counsel for Joy DeGrasse allowing ten (10) days to cure the default, shall automatically and without further order of the Bankruptcy Court result in the dissolution of the injunction granted hereunder solely as to said Cadence Bank.**

f. The following language is added to the language of Article 11, Section 11.02:

"F. Undisputed Claim of Gardenmasters. On the Effective Date, the amount of the claim asserted by Gardenmasters of SW Florida, Inc. in its Proof of Claim, Claim No. 3, shall constitute a duly allowed claim against the Debtor, for the amount of $461,484.87, not subject to objection by the Debtor."

"G. Undisputed Claim of James R. Giezewski and Maria L. Giezewski. On the Effective Date, the amount of the claim asserted by James R. Giezewski and Maria L. Giezewski, in their

Proof of Claim, Claim No. 14, shall constitute a duly allowed claim against the Debtor, for the amount of $255,534.30, not subject to objection by the Debtor."

"H. <u>Subordinated Claim</u>.   The duly scheduled general unsecured claim of Joy DeGrasse shall be subordinated to all Class 3 claims and no payment shall be made for the DeGrasse claim until the allowed amount of all other Class 3 claims have been received from the Fund under the Plan.   The objection of Gardenmasters of SW Florida, Inc. to the claim of Joy DeGrasse has been withdrawn."

"I.   <u>Contingent Claim</u>.   Cadence Bank has filed an unsecured claim for $297,000.00 for a PPP loan.   It is understood that this Cadence Claim is contingent; specifically, the debtor will not pay the Cadence Claim if the PPP loan is forgiven."

g.   The following language is added to the language of Article 11, after Section 11.03:

"In addition, if the default is not cured, the salaries of John Degrasse and Joy DeGrasse shall cease and shall not be paid until after such default has been cured"

h.   Article 10, Section 3, is modified by substituting the employment contracts attached hereto as Exhibit B.

2.   The Objection to Confirmation of Debtor's Second Amended Plan of Reorganization of James R. Giezewski and Maria L. Giezewski (Doc. 161) ( Giezewskis ) is hereby SUSTAINED as set forth herein.   Notwithstanding anything in the Second Amended Plan of Reorganization to the contrary, the Giezewskis shall not be deemed to have consented, nor shall the Second Amended Plan of Reorganization or this Order Confirming Second Amended Plan of Reorganization bar or enjoin the Giezewskis from pursuing their rights, remedies and privileges against non-debtor Joy Degrasse, including i) any rights or remedies under any personal guaranty; ii) asserting any claim or cause of action; iii) filing suit; or iv) enforcing that certain Final Summary Judgment entered on October 6, 2020, by the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County Florida, under case no. 2020-CA-002070-NC.

3.   The Plan provides, consistent with § 1194(b) of the Bankruptcy Code, for the Debtor to make the Plan payments. Accordingly, the subchapter V trustee shall not be required to make any payments to creditors under the Plan. However, notwithstanding anything that may be to the contrary in §§ 1181 – 1195 of Chapter 11 of the Bankruptcy Code, Debra J. Jackson, the current subchapter V trustee, shall remain as the subchapter V trustee post-confirmation to monitor the Debtor's performance under the Plan. The Debtor shall be required to file quarterly operating reports and provide the subchapter V trustee with other reports and information requested by her.

4.   The objections to the Plan by Cadence Bank (Doc. 132) and Gardenmasters of SW Florida (Doc. 160) are OVERRULED as moot.

5. The limited objection to the Plan by James and Maria Giczewski (Doc. 161) is SUSTAINED to the extent provided by paragraph 2 of this order, but otherwise is OVERRULED, subject to approval by this Court of the settlement agreement between James and Maria Giczewski and the debtor.

6. The supplemental objection to the Plan by Cadence Bank (Doc. 163) is OVERRULED as moot.

7. The objection to the scheduled claim of Joy DeGrasse by Gardenmasters of SW Florida is OVERRULED as moot.

8. The Motion to Allow Late Ballot filed by Gardenmasters of SW Florida is DENIED as moot.

9. Notwithstanding the entry of this Order of Confirmation, until this case is closed, this Court shall retain jurisdiction of this bankruptcy case, and all corresponding adversary proceedings, for those purposes permitted under applicable law, including, but not limited to the following purposes:

   a. The classification of the claim of any creditor and the determination of such objections as may be filed to creditors' claims. The failure by the Debtor to object to, or to examine any claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor s right to object to or re-examine the claim in whole or in part.

   b. Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, which relate to the right of the Debtor to recover assets pursuant to the provisions of title 11 of the United States Code.

   c. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or the Order of Confirmation as may be

necessary to carry out the purposes and intent of the Plan.

  d. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

  e. To enforce and interpret the terms and conditions of the Plan.

  f. Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor under the Plan, and to impose such limitation, restrictions, terms and conditions of such title, rights, and powers as this court may deem necessary.

  g. Entry of an order concluding and terminating this case.

10. Any outstanding applications for payment of an administrative expense must be filed no later than thirty (30) days from the date of this order.

11. The Court will conduct a Post-Confirmation Status Conference on May 13, 2021 at 9:30 a.m. in Courtroom 9B, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa Florida.

   **A schedule summarizing the timing and amount of payments
    to be made under the Plan is attached hereto as Exhibit A.**

Attorney Benjamin G. Martin, Esq., is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file proof of service within three days of the entry of this Order.

# EXHIBIT A

Schedule Summarizing the Timing and Amount of Payments to be made Under the Plan

| Creditor | Class No. | Classification | Claim Amount | Total Payment Amount | Schedule of Timing and Amount of Payments |
|---|---|---|---|---|---|
| Benjamin G. Martin, Esq. | Admin | Admin. Expense | $30,000.00 * | To be determined | Paid over 6 months |
| Debra Jackson | Admin | Admin. Expense | $17,000.00 * | To be determined | Paid over 6 months |
| James & Maria Giczewski | Admin | Admin. Expense | $30,000.00 | $30,000.00 | Paid over 60 days |
| Strategic Funding | 2A | Secured | $26,664.24 | $811.00 | Paid monthly over 36 months |
| Cadence Bank | 2B | Secured | $298,284.21 | $1,789.00, then $2,600.00 | Paid monthly over 48 months |
| Cadence Bank | 2C | Secured | $26,381.16 | $1,284.00 | Paid monthly per contract |
| American Farms | 3 | non-priority unsecured | $6,056.56 | $5,255.58 | Total amount of $5,255.58 payable in monthly installments over 48 months |
| Bennett Contracting | 3 | non-priority unsecured | $729.00 | $632.59 | Total amount of $632.59 payable in monthly installments over 48 months |
| Bentley & Bruning, P.A. | 3 | non-priority unsecured | $4,813.88 | $4,177.24 | Total amount of $4,177.24 payable in monthly installments over 48 months |
| BTS Horticultural | 3 | non-priority unsecured | $256,079.18 | $222,212.54 | Total amount of $222,212.54 payable in monthly installments over 48 months |
| Cadence Bank | 3 | non-priority unsecured | $371,334.44 | $322,225.21 | Total amount of $322,225.21 payable in monthly installments over 48 months |
| Cadence Bank | 3 | non-priority unsecured | $19,423.67 | $16,854.88 | Total amount of $16,854.88 payable in monthly installments over 48 months |
| Deiter's Sod | 3 | non-priority unsecured | $10,911.76 | $9,468.67 | Total amount of $9,468.67 payable in monthly installments over 48 months |

Schedule Summarizing the Timing and Amount of Payments to be made Under the Plan

| | | | | | |
|---|---|---|---|---|---|
| Edgewood Nursery | 3 | non-priority unsecured | $23,248.65 | $20,174.00 | Total amount of $20,174.00 payable in monthly installments over 48 months |
| Enverra | 3 | non-priority unsecured | $1,578.25 | $1,369.53 | Total amount of $1,369.53 payable in monthly installments over 48 months |
| First National Bank of Omaha | 3 | non-priority unsecured | $25,120.96 | $21,798.70 | Total amount of $21,798.70 payable in monthly installments over 48 months |
| First National Bank of Omaha | 3 | non-priority unsecured | $1,252.92 | $1,087.22 | Total amount of $1,087.22 payable in monthly installments over 48 months |
| Frontier Communications | 3 | non-priority unsecured | $167.77 | $145.58 | Total amount of $145.58 payable in monthly installments over 48 months |
| Gardenmasters of SW FL | 3 | non-priority unsecured | $461,484.87 | $400,453.18 | Total amount of $400,453.18 payable in monthly installments over 48 months |
| James & Maria Giczewski | 3 | non-priority unsecured | $255,534.30 | $221,739.68 | Total amount of $221,739.68 payable in monthly installments over 48 months |
| Internal Revenue Service | 3 | priority unsecured | $82,576.58 | $2,293.79 | Total amount of $2,293.79 payable in monthly installments over 48 months |
| Internal Revenue Service | 3 | non-priority unsecured | $17,294.85 | $15,007.59 | Total amount of $15,007.59 payable in monthly installments over 48 months |
| Luxury Home Magazine | 3 | non-priority unsecured | $1,500.00 | $1,301.62 | Total amount of $1,301.62 payable in monthly installments over 48 months |
| Manatee County Utilities | 3 | non-priority unsecured | $18,147.62 | $15,747.58 | Total amount of $15,747.58 payable in monthly installments over 48 months |

Schedule Summarizing the Timing and Amount of Payments to be made Under the Plan

| Name | Class | Type | Claim Amount | Payment Amount | Terms |
|---|---|---|---|---|---|
| Michael France | 3 | non-priority unsecured | $15,866.01 | $13,767.72 | Total amount of $13,767.72 payable in monthly installments over 48 months |
| Midco Petroleum | 3 | non-priority unsecured | $12,050.29 | $10,456.63 | Total amount of 10,456.63 payable in monthly installments over 48 months |
| Mike Armstrong Landscaping | 3 | non-priority unsecured | $3,265.64 | $2,833.76 | Total amount of $2,833.76 payable in monthly installments over 48 months |
| Mulch Blowers of Florida | 3 | non-priority unsecured | $624.00 | $541.48 | Total amount of $541.48 payable in monthly installments over 48 months |
| Next Level Turf | 3 | non-priority unsecured | $45,469.09 | $39,455.77 | Total amount of $39,455.77 payable in monthly installments over 48 months |
| NKC Enterprises d/b/a M&W Supply | 3 | non-priority unsecured | $37,578.88 | $32,609.05 | Total amount of $32,609.05 payable in monthly installments over 48 months |
| Pit Stop Auto Repair | 3 | non-priority unsecured | $1,894.00 | $1,643.52 | Total amount of $1,643.52 payable in monthly installments over 48 months |
| Pye Barker Fire & Safety | 3 | non-priority unsecured | $257.40 | $223.36 | Total amount of $223.36 payable in monthly installments over 48 months |
| SaraMan Business Products | 3 | non-priority unsecured | $987.52 | $856.92 | Total amount of $856.92 payable in monthly installments over 48 months |
| Sarasota County Tax Collector | 3 | priority unsecured | $3,100.33 | $86.12 | Total amount of $86.12 payable in monthly installments over 48 months |
| Sarasota County Tax Collector | 3 | priority unsecured | $2,512.06 | $69.78 | Total amount of $69.78 payable in monthly installments over 48 months |

Schedule Summarizing the Timing and Amount of Payments to be made Under the Plan

| | | | | | |
|---|---|---|---|---|---|
| Site One Landscaping | 3 | non-priority unsecured | $9,564.07 | $8,299.22 | Total amount of $8,299.22 payable in monthly installments over 48 months |
| Southeast Spreading Co. | 3 | non-priority unsecured | $12,205.68 | $10,591.47 | Total amount of $10,591.47 payable in monthly installments over 48 months |
| Superior Architectural | 3 | non-priority unsecured | $733.20 | $636.23 | Total amount of $636.23 payable in monthly installments over 48 months |
| Triple O Nursery Farms | 3 | non-priority unsecured | $1,611.15 | $1,398.07 | Total amount of $1,398.07 payable in monthly installments over 48 months |
| TWC Distributors | 3 | non-priority unsecured | $38,531.45 | $33,435.64 | Total amount of $33,435.64 payable in monthly installments over 48 months |

* Estimated amount

# EXHIBIT B

# **THE EMPLOYMENT AGREEMENT**
## [JOHN DEGRASSE]

**THIS IS THE EMPLOYMENT AGREEMENT** ("Agreement") between Performance Driven Landscaping Corp., a Florida corporation (herein after "Company"), and John DeGrasse ("Employee").

WHEREAS, the Company desires to employ the Employee, and the Employee desires to be employed by the Company on such terms and conditions.

NOW, THEREFORE, in consideration of the mutual covenants, promises, and obligations set forth herein, the parties agree as follows:

1. **Position and Duties.** As the **General Manager of the Company**, the Employee shall control and be responsible for the business operations of the Company, and agrees to perform faithfully the duties assigned to him to the best of his ability, to devote his full and undivided time to the transaction to the Company's business in a professional manner.

2. **Term**. The Term of the Employment shall commence the Effective Date defined herein and shall expire on the fourth anniversary thereafter. Thereafter, the Employee's employment shall be renewed automatically, upon the same terms and conditions subject to any amendments or modifications, for successive one-year terms, unless either party shall give written notice to the other of its intention not to renew such employment at least six months prior to such the expiration of the relevant Term. Otherwise, the Company agrees that the Employee may only be terminated during the Term for "cause." For purposes of this Agreement, "cause" means (i) willful and substantial misconduct, (ii) Employee's repeated, after written notice from the Company, neglect of duties or failure to act which can reasonably be expected to affect materially and adversely the business or affairs of the Company, (iii) the commission by the Employee of any material fraudulent act with respect to the business and affairs of the Company, or (iv) the Employee's conviction of (or plea of nolo contendere to) a crime constituting a felony.

3. **Compensation.** As full compensation for all services provided the employee shall be paid at the rate of **$7,500.00 per month.** With adjustments to reflect cost-of-living increases, as follows:

a. Immediately prior to the date of the anniversary of the first payment provided for above so long as such payments continue, the corporation shall compute a cost-of-living increase adjustment factor by which weekly payments during the following year are to be multiplied. The weekly payments to be multiplied are those determined above without regard to any prior cost-of- living increase adjustment. The factor shall consist of a fraction the numerator of which shall be the most recently determined cost-of-living index when the calculation is made, and the denominator of which shall be the most recently determined cost-of-living index determined on the Effective Date of the Plan of Reorganization.

b. The cost-of-living indices required for this calculation shall be obtained from the Consumer Price Index published by the Bureau of Labor Statistics of the United States Department of Labor. In any year in which this index is not available, the corporation shall find and use some similar criterion and establish retroactively an initial index figure for the denominator of the fraction consistent with the intent of this provision.

This contract shall be in effect from the effective date of the company's Chapter 11 reorganization plan ("Effective Date"), until said Plan is completed.

Dated this _____ day of February, 2021.

| COMPANY | EMPLOYEE |
|---|---|
| PERFORMANCE DRIVEN LANDSCAPING CORP., a Florida corporation | |
| By: Joy DeGrasse<br>Its: President | John DeGrasse<br>Individually |

# THE EMPLOYMENT AGREEMENT
## [JOY DEGRASSE]

**THIS IS THE EMPLOYMENT AGREEMENT** ("Agreement") between Performance Driven Landscaping Corp., a Florida corporation (herein after "Company"), and Joy DeGrasse ("Employee").

WHEREAS, the Company desires to employ the Employee, and the Employee desires to be employed by the Company on such terms and conditions.

NOW, THEREFORE, in consideration of the mutual covenants, promises, and obligations set forth herein, the parties agree as follows:

1. **Position and Duties.** As the **Business Development and Customer Relations Manager**, the Employee agrees to perform faithfully the duties assigned to her to the best of her ability, to devote her full and undivided time to the transaction to the Company's business in a professional manner.

2. **Term**. The Term of the Employment shall commence the Effective Date defined herein and shall expire on the fourth anniversary thereafter. Thereafter, the Employee's employment shall be renewed automatically, upon the same terms and conditions subject to any amendments or modifications, for successive one-year terms, unless either party shall give written notice to the other of its intention not to renew such employment at least six months prior to such the expiration of the relevant Term. Otherwise, the Company agrees that the Employee may only terminated during the Term for "cause." For purposes of this Agreement, "cause" means (i) willful and substantial misconduct, (ii) Employee's repeated, after written notice from the Company, neglect of duties or failure to act which can reasonably be expected to affect materially and adversely the business or affairs of the Company, (iii) the commission by the Employee of any material fraudulent act with respect to the business and affairs of the Company, or (iv) the Employee's conviction of (or plea of nolo contendere to) a crime constituting a felony.

3. **Compensation.** As full compensation for all services provided the employee shall be paid at the rate of **$7,500.00 per month.** With adjustments to reflect cost-of-living increases, as follows:

a. Immediately prior to the date of the anniversary of the first payment provided for above so long as such payments continue, the corporation shall compute a cost-of-living increase adjustment factor by which weekly payments during the following year are to be multiplied. The weekly payments to be multiplied are those determined above without regard to any prior cost-of- living increase adjustment. The factor shall consist of a fraction the numerator of which shall be the most recently determined cost-of-living index when the calculation is made, and the denominator of which shall be the most recently determined cost-of-living index determined on the Effective Date of the Plan of Reorganization.

b. The cost-of-living indices required for this calculation shall be obtained from the Consumer Price Index published by the Bureau of Labor Statistics of the United States Department of Labor. In any year in which this index is not available, the corporation shall find and use some similar criterion and establish retroactively an initial index figure for the denominator of the fraction consistent with the intent of this provision.

This contract shall be in effect from the effective date of the company's Chapter 11 reorganization plan ("Effective Date"), until said Plan is completed.

Dated this _____ day of February, 2021.

| COMPANY | EMPLOYEE |
|---|---|
| PERFORMANCE DRIVEN LANDSCAPING CORP., a Florida corporation | |
| By: Joy DeGrasse<br>Its: President | Joy DeGrasse<br>Individually |

PERFORMANCE DRIVEN LANDSCAPING CORP.
Chapter 11/ 8:20-03569 RCT