UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

PERFORMANCE DRIVEN LANDSCAPING CORP.,

    Debtor.
_____/

Case No. 8:20-bk-03563-RCT

Chapter 11

### OBJECTION TO THE DEBTOR'S MOTION TO MODIFY CONFIRMED PLAN OF REORGANIZATION AND DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION, DATED MAY 6, 2021

COMES NOW James R. and Maria L. Giczewski (collectively, "Creditor"), hereby objects to the Motion to Modify Confirmed Plan of Reorganization (the "Motion") and the Third Amended Plan of Reorganization, Dated May 6, 2021 (the "Proposed Plan") filed by Performance Driven Landscaping Corp. ("Debtor"), as follows:

### BACKGROUND

1. The Creditor owns real property consisting of a non-residential building located at 7840 Fruitvale Road, Sarasota Florida (the "Property").

2. Creditor and Debtor entered into that certain Lease Agreement dated July 31, 2018, for the Property (the "Lease").

3. On May 4, 2020 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Upon the Debtor's Motion, the case was converted to a chapter 11 case on May 14, 2020.

4. After the Petition Date, the Debtor continued to occupy the Property.

5. On June 17, 2020, Creditor filed its Motion to Compel the Rejection of Lease of Real Property and Request for Immediate Payment of Post-Petition Rent (Doc. No. 67) (the "Creditor Rejection Motion"). Instead of agreeing to an Order rejecting the Lease, on June 25,

2020, the Debtor filed its own separate motion to reject the Lease (Doc. No. 78) (the "Debtor Rejection Motion"). On July 30, 2020, the Court held a hearing with respect to the Creditor Rejection Motion and the Debtor Rejection Motion.

6. On July 30, 2020, the Creditor filed it proof of claim which included the anticipated lease rejection damages. The Creditor asserted a $13,000.00 secured claim for the security deposit and an unsecured claim in the amount $231,017.77.

7. On August 13, 2020, the Court entered its Order rejecting the Lease (Doc. No. 118) (the "Rejection Order"), providing the Creditor with thirty (30) days from entry of the Rejection Order to file this Request and the Court reserved the right to determine the date of the lease rejection.

8. On September 4, 2020, in accordance with the Rejection Order, Creditor filed its Request for Final Allowance and Immediate Payment of Administrative Expense Claim (the "Administrative Claim") asserting an administrative expense claim in the amount of $63,767.20.

9. On October 6, 2020, the Circuit Court for the Twelfth Judicial Circuit entered that certain Summary Final Judgment (the "Judgment") against the Debtor's insider, Joy DeGrasse, in favor of Creditor for her breach of a guaranty of the Lease in the amount of $479,194.78. See Exhibit "A".

10. On November 7, 2020, Debtor filed its Second Amended Plan of Reorganization dated November 6, 2020 (the "Second Plan") and Creditor filed an objection to confirmation of the Second Plan on December 3, 2020.

11. After significant negotiations, the parties resolved their disputed in the bankruptcy case and entered into that certain Settlement Agreement dated February 11, 2021. Under the Settlement Agreement, the parties agreed to, among other things: i) a reduced administrative

claim; ii) a floor recovery with respect to unsecured claims (72%); iii) the removal of certain release provisions of Joy DeGrasse in the Second Plan; iv) that the Plan could not be modified absent approval of the Creditor, and v) the Debtor could not receive discharge of Creditor's claims if Debtor defaulted.

12. The Court entered an Order approving the Settlement Agreement on March 15, 2021 (the "Settlement Order"). In the Settlement Order, the Court approved the Settlement Agreement, modified the automatic stay upon default by the Debtor, and clarified that the Creditor can continue to pursue its collection efforts pursuant to the Judgment against Joy DeGrasse.

13. On March 18, 2021, the Court entered its Order Confirming Second Amended Plan (Doc. 193) (the "Confirmation Order"). Under the Confirmation Order, the Debtor would not receive a discharge until all payments are made under the Plan.

14. A month and a half later, the Debtor filed the Motion on May 3, 2021, without filing the Proposed Plan.

15. On May 6, 2021, the Debtor filed its Proposed Plan. The Proposed Plan is a complete change from what was agreed to in the Settlement Agreement or reflected in the Second Plan as amended in the Confirmation Order. The Proposed Plan reflects a sale that should result in lesser distribution to unsecured creditors. It temporarily enjoins actions against insider Joy DeGrasse. It converts 50% of Joy DeGrasse's salary from salary to a 50% "loan" that does not need to be repaid if she works for the buyer.

16. It is unclear what value Joy DeGrasse brings to the buyer. Joy DeGrasse has admitted under oath that she has been an "absentee president" of the Debtor. Exhibit "B" pg. 6 lines 9-23. She has also admitted that she does not play any role in maintaining the relationships

ORLDOCS 18246837 1

of the Debtor and its customers. See Exhibit "B" pg. 34, lines 13-16. Tus, it appears that the proposed sale may not be an arms-length transaction.

17. It does not appear that the Debtor will be able to comply with the Sale Agreement as proposed because the Closing of the sale is contingent on all creditors of Ms. DeGrasse releasing her of her guaranty liabilities by May 15, 2021. Creditor has not agreed to such a release. See Sec. 7.3 of Sale Agreement attached as Exhibit "E" to the Proposed Plan.

18. Since the entry of the Confirmation Order, the Creditor has received $30,000.00 as part of its administrative claim.

## OBJECTION

19. In the Motion, the Debtor seeks to modify the confirmed Plan under section 1193(c) of the Bankruptcy Code. Section 1193(c) states, in pertinent part:

> If a plan has been confirmed under section 1191(b) of this title, the debtor may modify the plan at any time within 3 years, or such longer time not to exceed 5 years, as fixed by the court, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1191(b) of this title. The plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan, as modified, under section 1191(b) of this title.

The Debtor has not established that modification of the Confirmed Plan is warranted and the Proposed Plan does not meet the standards of section 1191(b) of the Bankruptcy Code. The reasoning for the proposed modification does not make sense. In the Plan, the Debtor claims that after the Confirmation Order, which was entered on March 18, 2021, the Debtor lost certain customer accounts requiring it to find a buyer for the Debtor. The Debtor apparently found a buyer and entered into an agreement by April 30, 2021 only six (6) weeks after entry of the Confirmation Order). It is not credible that the Debtor conducted a reasonable sales effort with respect to the Debtor's business in that time frame nor it is credible that the Debtor was not

4

aware of these issues at the time the Confirmation Order was entered.

20. The Debtor has also not filed a motion providing for reasonable sale procedures or any basis as to why the proposed sale is reasonable or in the best interest of creditors. This process must be undertaken before the Court can grant the Motion or confirm any modified Plan in order to allow a full vetting of the process.[1]

21. The Debtor has also failed to provide any basis to conclude that the proposed sale is to the benefit of unsecured creditors in lieu of continued operations under the Second Plan. The Debtor provide no analysis with respect to the reduction of disposable income under the Second Plan due to the alleged loss of accounts.

22. The Proposed Plan is not in the best interest of creditors,[2] in not being propose din good faith,[3] and is being proposed to benefit Joy DeGrasse. For example, under the Confirmed Plan and Settlement Agreement, the Debtor agreed to a 72% return to the unsecured creditors. It does not appear that at the proposed price, the Debtor will come near to being able to generate that amount of a return.

23. The Proposed Plan, however, does provide a large benefit to insider Joy DeGrasse. The focus on Ms. DeGrasse is evident because the entire sale is contingent on her first obtaining releases of her guaranty liabilities. If that provision is waived, Joy DeGrasse receiving an $180,000 "loan" (more than 10% of the alleged purchase price) under the Proposed Plan in lieu of a portion of her salary is clearly to avoid any writs of garnishment relating to the Judgment. This "loan" is front loaded compensation or a diversion of a portion of the purchase

---

[1] See 11 U.S.C. Sec. 363.

[2] See 11 U.S.C. Sec 1191(b).

[3] See 11 U.S.C. Sec. 1129(a)(3). In re Bravo Enterprises USA, LLC, 331 B.R. 459, 472 (Bankr. M.D. Fla. 2005) (The term "good faith" is not defined in the Bankruptcy Code. It is determined in light of the totality of the circumstances). Here, the sudden plan modification and it primarily benefitting insiders establishes the Proposed Plan does not meet the good faith standard.

price to Joy DeGrasse because it will be made at the time the purchase price is paid and the loan be **forgiven** if she acts as a consultant for four years with the buyer.

24. There is no business reason for the buyer to make this loan to Joy DeGrasse because Joy DeGrasse is not necessary to operate the business. As addressed above, she was not an involved President and under her guidance, if we believe the Debtor's claims, the Debtor continues to lose customers.

25. There is also no basis to stay any claims by the Creditor against Joy DeGrasse even for a moment. The Proposed Plan states that the Creditor will not be enjoined from pursuing any action against Joy DeGrasse, but at the same time requires claim holders to "forbear" on action while the payments are made under the Proposed Plan. If the Debtor is seeking to enjoin the Creditor until the sale is closed and distribution are made, there is no basis for such injunction as it violates the Settlement Agreement and pertinent case authority.[4]

26. There is also an equitable concern as to why the Proposed Plan should not be confirmed. The Creditor, in good faith, agreed to more than a 50% reduction to its administrative claim in order to receive a 72% distribution under the Second Plan and Settlement Agreement. Now, the Debtor is proposing a lesser distribution in violation of section 13 of the Settlement Agreement. Because the Debtor is materially breaching the Settlement Agreement, the Creditor reasserts the full remaining amount of its administrative claim and the full amount of that claim should be paid through the Proposed Plan (if it is confirmed).

---

[4] See, among others, In re Seaside Engineering & Surveying, Inc., 780 F.3d 1070 (11th Cir. 2015). In re: HWA Properties, Inc., 544 B.R. 231, 239-240 (Bankr. M.D. Fla. 2016), In re Mercedes Homes, Inc., 431 B.R. 869 (Bankr. S.D. Fla. 2009); Colony Beach and Tennis Club Assoc., Inc. v. Colony Lender, LLC (In re Colony Beach and Tennis Club Assoc., Inc.), 508 B.R. 468, 486 (Bankr. M.D. Fla. 2014).

27. The Creditor asserts and reserved all right under the Settlement Agreement and all Orders of this Court. Furthermore, the Creditor is still investigating the Proposed Plan and Motion and reserves and asserts its rights to assert further objections.

WHEREFORE, the Motion should be denied, the Proposed Plan should not be confirmed and the Court should grant any relief it deems just.

Respectfully submitted on May 10, 2021.

/s/ James A. Timko
JAMES A. TIMKO, ESQ.
Florida Bar No.: 0088858
jtimko@shutts.com
SHUTTS & BOWEN LLP
300 S. Orange Avenue, Suite 1600
Orlando, Florida 32801
Phone: (407) 835-6808
Facsimile: (407) 425-8316
*Attorneys for James R. and Maria L. Giczewski*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 10, 2021, a true and correct copy of the foregoing was served on all parties listed below via this Court's CM/ECF System on all parties-in-interest receiving CM/ECF notice.

/s/ James A. Timko
JAMES A. TIMKO